**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FORT SMITH DIVISION**

**SHARON MARSHALL**                                                                                      **PLAINTIFF**

**V.**                                     **CASE NO. 2:23-CV-2119**

**OUTBACK STEAKHOUSE OF FLORIDA, LLC**                                  **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant Outback Steakhouse of Florida, LLC's ("Outback) Motion to Limit Testimony of Plaintiff's Treating Physician Brian Goodman, M.D. (Doc. 50) and Brief in Support (Doc. 51), Plaintiff Sharon Marshall's Response (Doc. 55) and Brief (Doc. 56) in Opposition, and Outback's Reply (Doc. 65). Also before the Court are Outback's Motion to Exclude Plaintiff's Expert Jason English (Doc. 52) and Brief in Support (Doc. 53), Ms. Marshall's Response (Doc. 57) and Brief (Doc. 58) in Opposition, and Outback's Reply (Doc. 64). For the reasons given below, both Motions are **DENIED**.

**I.     BACKGROUND**

On January 22, 2022, Ms. Marshall was dining at an Outback Steakhouse in Fort Smith, AR, when she slipped, fell, and received serious injuries. She alleges that she slipped on soup that had spilled in the floor which Outback had negligently failed to clean up. So she filed this suit for negligence against Outback in the Circuit Court for Sebastian County, Arkansas, *see* Doc. 3, which Outback removed to this Court, *see* Doc. 2. Outback has filed motions to exclude or limit the testimony of two of Ms. Marshall's expert witnesses: Dr. Brian Goodman, who is one of her treating physicians, and Jason English,

1

who is an industrial and safety engineer. Ms. Marshall, of course, opposes both motions, which have been fully briefed and are now ripe for decision.

## II.     LEGAL STANDARD

The decision whether to exclude expert testimony is committed to a district court's discretion—subject, of course, to the Federal Rules of Evidence, including Rule 702. *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 561 (2014). Rule 702 states that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The Eighth Circuit has "boiled down" these requirements into a three-part test:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Johnson*, 754 F.3d at 561 (quoting *Polski v. Quigley Corp.*, 538 F.3d 836, 839 (8th Cir. 2008)). The proponent of expert testimony bears the burden of showing by a preponderance of the evidence that these requirements are satisfied. *See Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757–58 (8th Cir. 2006).

A district court possesses broad discretion in making its reliability determination. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999). When assessing the validity of

expert opinions, the trial court may consider one or more of the following non-exclusive factors: (1) whether the theory or methodology can be tested; (2) whether the theory or methodology has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the theory has been generally accepted in the relevant scientific community.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593–94 (1993).  "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."  Fed. R. Evid. 702.  However, "[e]xpert testimony that is speculative is not competent proof and contributes nothing to a legally sufficient evidentiary basis."  *J.B. Hunt Transp., Inc. v. Gen. Motors Corp.*, 243 F.3d 441, 444 (8th Cir. 2001) (internal citations omitted).

"A witness can be qualified as an expert by knowledge, skill, experience, training or education . . . ."  *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001) (internal quotations omitted).  And "[t]he relative skill or knowledge of an expert goes to the weight of that witness's testimony, not its admissibility."  *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 569 (8th Cir. 1988).  "[I]t is the responsibility of the trial judge to determine whether a particular expert has sufficient specialized knowledge to assist jurors in deciding the specific issues in [a] case."  *Wheeling Pittsburg Steel Corp.*, 254 F.3d at 715.

To prove useful to a jury, an expert's opinion should rely on their specialized knowledge; "[w]here the subject matter is within the knowledge or experience of lay people, expert testimony is superfluous."  *Ellis v. Miller Oil Purchasing Co.*, 738 F.2d 269, 270 (8th Cir. 1984).  Further, an expert should not make unsupported assertions that go beyond their area of expertise.  *See Anderson v. Raymond Corp.*, 340 F.3d 520, 523 (8th

Cir. 2003) (finding the district court did not abuse its discretion where it prohibited an expert from testifying on matters admittedly beyond his expertise). To that end, an expert should not opine on legal conclusions, as they will not assist the jury either. *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir.1995) ("The legal conclusions were for the court to make. It was an abuse of discretion to allow the testimony.").

### III. DISCUSSION

The Court will begin its analysis with Outback's Motion regarding Dr. Goodman. Then it will turn to Outback's Motion regarding Mr. English.

### A. Motion to Limit Testimony of Plaintiff's Treating Physician Brian Goodman, M.D. (Doc. 50)

Dr. Goodman is a physician who has been providing Ms. Marshall with pain-management treatment for spinal injuries which she alleges were caused by her fall at Outback. Dr. Goodman has also been retained to offer opinion testimony as an expert witness in this case. Those opinions include the opinion that the spinal injuries and associated pain that he has been treating were caused or worsened by Ms. Marshall's fall at Outback.

Outback argues that Dr. Goodman should not be allowed to offer these opinions, for two reasons. First, Outback contends that Dr. Goodman is not qualified to opine on what caused the injuries that are the subject of this case because he is not a spinal specialist, did not perform surgery in this case, and is not an orthopedic surgeon, neurologist, diagnostic radiologist, or biomechanical engineer. *See* Doc. 51, p. 9. Second, Outback maintains that Dr. Goodman's causation opinions are speculative and unreliable because they are based only on Ms. Marshall's statements to him and not on

"any sort of scientific analysis" nor on the review of "any additional medical records, depositions, photographs, or otherwise." *See id.* at 9–10.

Regarding the first argument, the Court finds that Dr. Goodman is qualified to offer his opinions in this case. He is a board-certified physician in pain medicine and anesthesiology, *see* Doc. 55-4, p. 3, who completed a fellowship in pain medicine, *see* Doc. 55-1, p. 1. He frequently treats patients suffering from pain caused by slip-and-falls. *See* Doc. 55-4, p. 4. And, as already mentioned, he has been treating Ms. Marshall for pain that he believes was caused by the injuries that are the subject of this lawsuit. He is obviously well-qualified to opine on the causes of what he is treating.

As for Outback's second argument regarding the reliability of Dr. Goodman's methodology: the Court believes his methods are sufficiently reliable to satisfy the requirements of Rule 702. Outback fixates on the relatively small number of materials Dr. Goodman reviewed during the first period when he was treating Ms. Marshall, during which time it seems he was relying primarily on her reports to him of her pain to inform his decisions and was unaware of significant parts of her medical history including possibly even the fact of her fall at Outback. *See, e.g.*, Doc. 55-4, pp. 9–10. However, the critical question for the admissibility of Dr. Goodman's opinions in this case is not what he knew or didn't know at the time he began treating Ms. Marshall, but rather what informed his opinions at the time that he offered them for purposes of this litigation. And Dr. Goodman has testified that before offering his most recent expert report in this case he reviewed many binders of materials containing Ms. Marshall's medical history, both pre-fall and post-fall, and that his opinions in this case were informed by his review of those materials as well as his personal experience treating Ms. Marshall and her reports

to him of her pain, and his experience treating patients with injuries from slip-and-falls more generally.  See id. at 6–8, 18–21.  Indeed, during his deposition Dr. Goodman took care to emphasize the difference between what information he relied on in forming his opinion of how to treat Ms. Marshall and what information he relied on in forming his opinions that were offered for purposes of this litigation.  See id. at 19.  To the extent Outback and its experts believe Dr. Goodman's medical file for Ms. Marshall does not support his opinions on causation, that goes to weight rather than admissibility; and they will, of course, have the opportunity to cross-examine Dr. Goodman and offer competing opinions and evidence at trial.  So Outback's Motion to limit Dr. Goodman's testimony will be denied.

### B.  Motion to Exclude Plaintiff's Expert Jason English (Doc. 52)

Ms. Marshall has retained Mr. English to offer expert opinions about whether the spill caused her fall (he opines it did), and about whether Outback's response to the alleged spill hazard and training of its employees to deal with such hazards was consistent with industry standards (he opines it wasn't).  Outback offers two arguments for excluding Mr. English's opinions.  First, they contend his opinions are not reliable.  Second, they say his opinions are not specialized.

Regarding reliability, Outback argues that Mr. English "is not a hospitality or restaurant expert," and that his opinions are not based on any examination or testing of the specific floor and restaurant at issue in this case.  See Doc. 53, pp. 7–8.  On the first point, however, Mr. English is a safety engineer who has two and a half decades of experience as a consultant who performs accident cause analysis, including fall protection and prevention from elevation as well as from the same level.  See Doc. 57-5,

pp. 1–2. He holds a certification in the measurement and evaluation of pedestrian traction on walking surfaces, and is a member of the "ASTM International F13 Committee on Pedestrian/Walkway Safety and Footwear." *See* Doc. 57-7, p. 2. He clearly has expertise in the topics on which he is opining.

As for testing on the specific floor where Ms. Marshall fell, Mr. English testified that he saw no point in testing that floor because:

> If I went there today or three months or whenever after the fact, the soup is no longer there. The restaurant has been in use daily. With their cleaning methods and traffic, it may vary a little bit depending on the time of day whether it was first in the morning versus 4:00 o'clock in the afternoon after you've got through lunch service and part of your dinner service and you've had a bunch of traffic coming in and out of your kitchen tracking on your floor, and potential food spills. So I wouldn't be able to recreate the exact spill condition even if I went to test it. I would be testing it basically as I found it, which would be reflective of the cleaning methods at the time I was there. . . . So for those reasons, I didn't feel it was necessary for this case.

(Doc. 57-6, pp. 45–46). Instead, Mr. English based his analysis on the deposition testimony, photographs, and document discovery that were produced in this case, *see* Doc. 57-7, p. 2, and interpreted it in light of his experience having performed "hundreds" of tests of "the same or similar surface as the floor in this particular case," which he explained is "just a common commercial flooring not only in restaurants but other types of commercial facilities as well," *see* Doc. 57-6, p. 93. As with Dr. Goodman, Outback's criticisms of Mr. English's methodology go to the weight it should be given, not its admissibility.

Regarding whether Mr. English's opinions are specialized: Outback insists that "[t]here is nothing specialized, scientific, or particularly technical about his opinion. He has simply looked at all the evidence of record and come to a conclusion. The jury can do the same." (Doc. 53, p. 9). The Court disagrees. Mr. English's report extensively

7

discusses codes and industry standards around, for example, slip resistance, spills, warning signs, and cleaning methods, and opines that Outback failed to meet them. *See* Doc. 57-7, pp. 8–13. He also discusses the "authoritative literature" on "ordinary human factors" that can influence patrons' awareness of hazards. *See id.* at 13. These are all specialized topics that cannot be expected to fall within the knowledge of an ordinary juror. Therefore, the Court finds Mr. English's opinion testimony is likely to be helpful to the trier of fact in understanding the evidence or determining facts in issue. *See* Fed. R. Evid. 702.

## IV.    CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Outback Steakhouse of Florida, LLC's Motion to Limit Testimony of Plaintiff's Treating Physician Brian Goodman, M.D. (Doc. 50) and Motion to Exclude Plaintiff's Expert Jason English (Doc. 52) are both **DENIED**.

**IT IS SO ORDERED** this 11th day of April, 2025.

        */s/ Timothy L. Brooks*
        TIMOTHY L. BROOKS
        UNITED STATES DISTRICT JUDGE